**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY VERRELLI, JUSTIN BALLANTYNE, ALEX LOPEZ, VANESSA SALAZAR, and SUSAN SCHULTZ,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED BROTHERHOOD OF CARPENTERS, EASTERN ATLANTIC STATES REGIONAL COUNCIL OF CARPENTERS, and WILLIAM C. SPROULE,<br><br>*Defendants*. | Civil Action No. 21-398<br>(JMV) (JBC)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this case, Plaintiffs allege they were unlawfully fired in retaliation for their protected activity. Presently before the Court is Plaintiffs' motion to remand this case to the Superior Court of New Jersey. The Court reviewed all the submissions in support and in opposition[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons discussed below, Plaintiffs' motion to remand is **GRANTED**.

---

[1] Plaintiffs' brief in support of their motion to remand will be referred to as "Pl. Br.," D.E. 28-4. Defendants' opposition brief will be referred to as "Opp. Br.," D.E. 31. And Plaintiffs' reply brief will be referred to as "Reply," D.E. 35.

I. **FACTS[2] AND PROCEDURAL HISTORY**

Defendant United Brotherhood of Carpenters ("UBC") "is a voluntary association and a labor organization." Compl. ¶ 9. Defendant Eastern Atlantic States Regional Council of Carpenters ("Eastern Atlantic") is an affiliate and/or subsidiary of UBC and acts under the direction of UBC; it was formerly known as Keystone Mountain Lakes Regional Council ("Keystone"). *Id.* ¶¶ 11-13. Defendant William C. Sproule is the Executive Secretary-Treasurer of Eastern Atlantic as well as "a member of the Union's 'upper management.'" *Id.* ¶ 15.

Plaintiffs Anthony Verrelli, Justin Ballantyne, Alex Lopez, Vanessa Salazar, and Susan Schultz were employees of Defendants UBC, Keystone, and Eastern Atlantic. *Id.* ¶¶ 3-7. The crux of Plaintiffs' Complaint is that Defendants retaliated against them because of their close relationship with former employee John Ballantyne – father of defendant Justin Ballantyne – who engaged in whistleblowing activity. *Id.* ¶¶ 33-34.

In October 2018, John Ballantyne and two other individuals filed suit against the Union[3] and three Union officers (the "Ballantyne matter"), asserting claims under New Jersey's Conscientious Employee Protection Act ("CEPA"). *Id.* ¶ 21. Plaintiffs attached the complaint from the Ballantyne matter to the Complaint in the present action. D.E. 1-4 at 36-52. The Ballantyne matter alleged that Ballantyne engaged in several instances of whistleblowing, which, among other things, resulted in the termination of George Laufenberg. *Id.* Ballantyne claimed that he was wrongfully terminated in retaliation for his whistleblowing activity. *Id.* On January

---

[2] The factual background is taken from Plaintiffs' Complaint ("Compl."), D.E. 1-1. In ruling on a motion to remand, "the district court must assume as true all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

[3] The Complaint refers often to "the Union" but fails to indicate whether that means UBC, Eastern Atlantic/Keystone, or all three.

2

11, 2019, the parties in the Ballantyne matter dismissed all claims and counterclaims with prejudice. Compl. ¶ 22.

Defendants' removal petition and briefing discuss another legal proceeding related to the Ballantyne matter, which is only briefly referenced in the Complaint, concerning an investigation into Laufenberg's alleged misconduct. D.E. 1, ¶ 10. Defendants attached as an exhibit the "Answer to Amended Complaint with Affirmative Defenses and Counterclaims" that was filed on behalf of Verrelli and Lopez (among other defendants in that lawsuit) in their role as Trustees of the Northeast Regional Carpenters Funds. D.E. 1-5 at 2-3. Two counterclaims were asserted: one alleging a breach of an Employee Retirement Income Security Act ("ERISA") fiduciary duty, and the second seeking a declaratory judgment to reduce Laufenberg's annuity account to recover losses. *Id.* at 56-59.

The Complaint in the present matter alleges the following. Plaintiff Verrelli has been a member of the Union since 1989. *Id.* ¶ 25. During his tenure, he held various leadership positions, such as Council Representative, Trustee of the Union's pension fund, and president of four separate Carpenters' Locals. *Id.* ¶¶ 25, 28-29. Verrelli "was a close friend to and supporter of John Ballantyne." *Id.* ¶ 27. Prior to John Ballantyne's termination, Verrelli worked with him "in efforts to rid the Union of corruption and discrimination and, instead, to foster an environment of fairness, honesty, transparency, diversity and inclusion." *Id.* Verrelli was involved in efforts to develop and support diversity and inclusion programs within the Union. *Id.* ¶ 31.

Plaintiffs allege that in 2017, Verrelli "blew the whistle on Union corruption." *Id.* ¶ 33. Specifically, "[a]s a Trustee of the Carpenters' Funds, Plaintiff Verrelli openly and publicly supported then Executive Secretary-Treasurer John Ballantyne's decision to advise law enforcement that former Carpenters' Funds Administrator George Laufenberg had embezzled $1.5

million from the Union's dues-funded Plan assets." *Id.* After John Ballantyne was terminated, Plaintiffs continue, "Defendants retaliated against Plaintiff Verrelli and the other Plaintiffs because of their close relationship to and support of John Ballantyne who, with Plaintiff Verrelli, complained about and objected to fraud and theft by George Laufenberg and participated in efforts to rid the Union of discrimination and harassment." *Id.* ¶ 34.

In 2018, after John Ballantyne's termination, a photo of Verrelli and John Ballantyne appeared on social media. *Id.* ¶ 35. Verrelli received a phone call from Trisha Mueller, who claimed to speak on behalf of the Union and "stated that it was unacceptable that . . . Verrelli have any relationship with John Ballantyne because he was responsible" for the Union being investigated. *Id.* Mueller threatened Verrelli, called him "a traitor to the organization, and "made it clear that Defendants perceived . . . Verrelli to be a 'traitor' who must be punished." *Id.* Following this conversation, Defendants "punished Verrelli for his whistleblowing, relationship with and support of John Ballantyne, including John Ballantyne's whistleblowing about corruption, and Verrelli's opposition to discrimination and harassment." *Id.* ¶ 36. Plaintiffs allege that the retaliation against Verrelli commenced "[a]lmost immediately" after John Ballantyne's termination and continued until Verrelli was terminated on March 27, 2020. *Id.* ¶ 37. Although Defendants claimed Verrelli was terminated because of the COVID-19 pandemic, Plaintiffs allege this was a pretext; Verrelli's termination "was retaliation for his complaining about corruption and fraud, for his relationship with John Ballantyne, and for his objections to discrimination and harassment." *Id.* ¶ 52.

Plaintiff Alex Lopez joined the Union in 1999, at the encouragement of John Ballantyne. *Id.* ¶ 71. Plaintiff was a Union Representative and served as a Trustee of the Northeast Carpenters Fund. *Id.* ¶¶ 72, 75. Lopez was a "close friend and supporter of John Ballantyne" and their

4

relationship "was well known throughout the Union, and specifically among members of the Union's upper management," including by Defendant Sproule. *Id.* ¶ 76. In December 2017, "Plaintiff Lopez voted to approve the Union's investigation into Mr. Laufenberg's illegal and fraudulent activity including Laufenberg's misappropriation of member funds." *Id.* ¶ 77. Defendants' retaliation against Lopez is alleged to have commenced less than two months after John Ballantyne's termination. *Id.* ¶¶ 78-79.

Plaintiff Justin Ballantyne, son of John Ballantyne, has been a Union carpenter since 2004. *Id.* ¶ 55. Like his father, he "objected to racism, discrimination, harassment and sexism in the Union." *Id.* ¶ 59. Plaintiffs allege that retaliation against Justin Ballantyne began the same day that John Ballantyne was fired and continued until he was terminated on March 27, 2020. *Id.* ¶¶ 58, 68.

Plaintiff Vanessa Salazar started her career as a Union carpenter in 2005. *Id.* ¶ 86. She was "encouraged and mentored by John Ballantyne" and was his close friend and supporter. *Id.* ¶¶ 87-88. Salazar worked with John Ballantyne on diversity and inclusion projects for the Union. *Id.* ¶ 90. After Defendants terminated John Ballantyne, they "made it clear" to Salazar that the new leadership – including Defendant Sproule – was "not interested in ridding the Union of race and sex discrimination" and "directed that she cease her efforts regarding diversity and inclusion." *Id.* ¶ 91. After observing a white male Counsel Representative make offensive racist comments, Salazar confronted him and emailed a formal complaint to her supervisor and the Director of Human resources. *Id.* ¶¶ 95-96. Plaintiffs allege that "[a]s a result of Plaintiff Salazar making a formal complaint to HR, the Defendants retaliated against" her. *Id.* ¶ 104. Salazar was terminated on March 27, 2020. *Id.* ¶ 106.

Plaintiff Schultz began her employment as a Union carpenter in 1979. *Id.* ¶ 109. Schultz "was a close friend and supporter of John Ballantyne," and their close relationship was well-known throughout the Union. *Id.* ¶ 111. Schultz was additionally a "vocal and active supporter of John Ballantyne's efforts to rid the Union of discrimination and harassment." *Id.* ¶ 112. Following John Ballantyne's termination, Schultz was subject to derivative and direct retaliation under her termination on March 27, 2020. *Id.* ¶¶ 114, 121.

Plaintiffs allege that they were "subjected to retaliation for associating with and supporting the efforts of someone who objected to, refused to participate in, and disclosed to a public body violations of law including fraud and criminal activity, which defrauded Union members, pensioners, and retirees." *Id.* ¶ 125. Additionally, Lopez and Verrelli allege that they were retaliated against "for their whistleblowing with regard to George Laufenberg's illegal conduct." *Id.* ¶ 132.

Plaintiffs filed a Complaint in the Superior Court of New Jersey, Law Division, Essex County on December 1, 2020. D.E. 1-4. Three claims were raised in the Complaint: Count One alleged derivative retaliation in violation of CEPA; Count Two – brought only by Plaintiffs Verrelli and Lopez – alleged a CEPA violation; and Count Three alleged retaliation in violation of the New Jersey Law Against Discrimination ("NJLAD"). Defendants timely removed the action on January 8, 2021. D.E. 1. Plaintiffs filed the present motion to remand on February 1, 2021, D.E. 28, which Defendants opposed, D.E. 31, and to which Plaintiffs replied, D.E. 35.

## II.   LEGAL STANDARD

Pursuant to the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is

pending." 28 U.S.C. § 1441(a). "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). A district court "must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties about the current state of controlling substantive law in favor of the plaintiff." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (quoting *Steel Valle Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)); *see also Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

### III.   ANALYSIS

Defendants' removal papers submit that the Court has federal question jurisdiction. D.E. 1. They argue that Plaintiffs' claims based on retaliation are preempted by ERISA § 510, and that Verrelli's claim that he was wrongfully removed as President of Local 254 is preempted by § 301 of the Labor Management Relations Act ("LMRA"). *Id.* ¶¶ 3-4.

Ordinarily, courts apply the "well-pleaded complaint" rule and look to the plaintiff's complaint to determine whether a case arises under federal law. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004). The existence of a defense rooted in federal law is insufficient to create federal question jurisdiction and "a defendant may not [generally] remove a case to federal court unless the plaintiff's complaint establishes that the case 'arises under' federal law." *Id.* (alteration in original) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10 (1983)). However, two narrow exceptions to the well-pleaded complaint rule permit a state case to be removed to federal court: "(1) when Congress expressly provides for removal; or (2) when a

federal statute wholly displaces the state-law cause of action through complete preemption." *Tarn v. Unilever U.S., Inc.*, No. 12-5577, 2013 WL 2359487, *3 (D.N.J. May 29, 2013).[4] Under the second exception, "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

### A. ERISA Preemption

ERISA's civil enforcement mechanism, Section 502(a), is "one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399-400 (3d Cir. 2004) (quoting *Davila*, 542 U.S. at 209). Under ERISA, there are two forms of preemption: "complete preemption" under Section 502(a), and "ordinary preemption" under Section 514(a). *Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171 (3d Cir. 1997). The difference between complete preemption and ordinary (or conflict) preemption is that "[u]nlike ordinary preemption, which would only arise as a federal defense to a state-law claim, complete preemption operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint." *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999). In other words, if ERISA completely preempts a state law cause of action, then a defendant may remove the matter to federal court on that basis alone, "even if the well-pleaded complaint rule is not satisfied." *Joyce*, 126 F.3d at 171. Thus, ERISA's complete preemption provision, Section

---

[4] There is an additional exception when a state law claim necessarily raises a federal issue, the federal issue is actually disputed and substantial, and the federal issue is capable of resolution without disturbing the federal-state balance approved by Congress. *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

502, is a misnomer, since it is "really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009). "But if the doctrine of complete preemption does not apply, even if the defendant has a defense of 'conflict preemption' within the meaning of § 514(a) . . . the district court is without subject matter jurisdiction." *Id.*; *see also Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (holding that "only complete preemption of a claim under ERISA § 502(a) is required for removal jurisdiction; conflict preemption under ERISA § 514 is not required"). By comparison, "[s]tate law claims which fall outside of the scope of § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule and, therefore, are not removable under the complete-preemption principles." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995). In short, complete preemption pursuant to Section 502(a) is a matter of federal subject-matter jurisdiction while conflict preemption under Section 514 is not.

"Congress intended § 502(a) to be the exclusive remedy for rights guaranteed under ERISA, including those provided by § 510." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990). Therefore, if Plaintiffs' state law claims are completely preempted by ERISA, remand is inappropriate. Courts employ a two-part test to determine whether a state law claim is completely preempted under Section 502(a) – a federal court has jurisdiction over a state law claim when (1) the plaintiff could have brought the action under Section 502(a) of ERISA and (2) no independent legal duty supports the plaintiff's claim. *Pascack Valley Hosp.*, 388 F.3d at 400; *see also Davila,* 542 U.S. at 210 (holding that a state law claim is completely preempted when action could have been brought under Section 502(a)(1)(B) and no other legal duty independent of ERISA

9

exists). The test is fashioned in the conjunctive so that "a state-law cause of action is completely preempted only if *both* of its prongs are satisfied." *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (emphasis added).

Pursuant to the first prong of the analysis, the parties contest whether Plaintiffs could have brought their CEPA claims under ERISA § 510. Pl. Br. at 8; Opp. Br. at 5. Section 510 provides, in relevant part, that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter." 29 U.S.C. § 1140 (emphasis added). The parties dispute whether Plaintiffs Verrelli and Lopez have "given information . . . in any inquiry or proceeding related to" ERISA.

Defendants argue that Plaintiffs, in connection with the legal proceedings against Laufenberg, were interviewed by the United States Attorney's Office as well as the Department of Labor and, ultimately, the government brought criminal charges against Laufenberg. Opp. Br. at 3. In support, Defendants submit a declaration from Defendant William Sproule. According to Sproule, while both Lopez and Verrelli were serving as Trustees, he attended a meeting of the Trustees and "[d]uring the course of that meeting, [he] observed Trustees leave and return to the room, one by one, to participate in interviews with attorneys . . . in anticipation of interviews to be conducted by the U.S. Attorney's Office for the District of New Jersey and the U.S. Department of Labor" in connection with Laufenberg's conduct. D.E. 31-2, ¶¶6, 8.[5] Sproule later learned that "all Trustees . . . had been interviewed by attorneys from the U.S. Attorney's Office . . . and the U.S. Department of Labor." *Id.* ¶ 10. Verrelli and Lopez maintain that they "did not provide

---

[5] "In deciding a [m]otion to [r]emand, a district court may rely on material outside of the complaint." *Plaxe v. Fiegura*, No. 17-1055, 2018 WL 2010025, at *1 n.1 (E.D. Pa. Apr. 27, 2018).

information to anyone regarding a lawsuit filed by George Laufenberg or a counterclaim filed by the Carpenters or Trustees."[6]  D.E. 35-2, ¶ 2; D.E. 35-1, ¶ 2.  In support of their position, Plaintiffs submitted declarations and supplemental declarations from Lopez and Verrelli.  D.E. 28-2, 28-3, 35-1, 35-2.

As detailed above, the party asserting federal jurisdiction in a removal case – here, Defendants – has the burden of establishing subject-matter jurisdiction.  *Frederico*, 507 F.3d at 193.  Additionally, this Court "must resolve all contested issues of substantive fact in favor of the plaintiff."  *Boyer*, 913 F.2d at 111.  Plaintiffs could only bring their claims under § 510 if Verrelli and Lopez gave information.  Construing the contested facts in favor of Plaintiffs, Defendants have not sufficiently established that Plaintiffs provided any information.  Defendants have therefore failed to satisfy the first prong.[7]  Because Defendants must satisfy both prongs to show complete preemption, the Court does not reach the second.  *Small v. Anthem Blue Cross Blue Shield*, No. 18-399, 2019 WL 2061258, at *4 (D.N.J. Jan. 30, 2019).

### B. LMRA Preemption

As a separate basis for federal question jurisdiction, Defendants argue that Plaintiffs' claim that Verrelli was wrongfully terminated is preempted by § 301 of the LMRA.  In their removal petition, Defendants submit that "Plaintiff Verrelli also seeks to hold the UBC and others liable

---

[6] The Court notes that in their initial declarations, Verrelli and Lopez indicated only that they had not provided "information based upon personal knowledge," *e.g.*, D.E. 28-2, ¶ 3, but in their supplemental declarations, they indicate that they have not provided *any* information.  If Verrelli and Lopez provided information – whether based upon personal knowledge or not – § 510 would likely preempt their CEPA claims.  However, on a motion to remand, this Court must construe disputed facts in Plaintiffs' favor.

[7] Should discovery reveal that Plaintiffs did give information related to ERISA, Defendants may have a basis to remove this matter.  *See* 29 U.S.C. § 1446(b)(3).

for allegedly removing him as President of Local 254 in August 2020." D.E. 1, ¶ 4. Defendants base this argument on the following paragraph in the Complaint:

> Plaintiff Verrelli's membership in the Union spans over 31 years, beginning in 1989. Since 2000, Plaintiff Verrelli served in an official capacity as a Council [R]epresentative in service to over 40,000 union members. Plaintiff Verrelli was elected President of Local 254 in 2017 and held that position until August 2020, *when he was removed by defendants.*"

Comp. ¶ 25 (emphasis added). Plaintiffs, in moving to remand, submit that this is merely a "biographical fact," and that Verrelli "has not brought any claim based on his rights under the Union Constitution." Pl. Br. at 13.

Section 301(a) of the LMRA provides for jurisdiction over suits involving the "violation of contracts between an employer and a labor organization . . . without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Section 301

> completely preempts a state cause of action only when the resolution of said action is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." By contrast, when resolution of the state law claim is "independent" of a CBA and does not require construing one, the state law claim is not preempted by § 301.

*N.J. Carpenters*, 760 F.3d at 305 (internal quotations and parenthetical omitted). "[P]re-emption should not be lightly inferred in this area," *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 412 (1988), and Section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *N.J. Carpenters*, 760 F.3d at 306.

It is not clear to the Court which portions of Plaintiffs' claims are alleged to be preempted by the LMRA. Reading the Complaint as a whole, the Court does not construe any of its allegations to claim that Verrelli was *wrongfully* removed – based on an agreement between Verrelli and a Defendant or Defendants – from his leadership position in Local 154 by Defendants. With respect to Verrelli, the Complaint alleges that Defendants began to retaliate against him

starting "[a]lmost immediately after John Ballantyne's termination" and continuing until his employment was terminated in March 2020.  Compl. ¶ 26.  Verrelli was not "removed" from his Local 254 leadership post until August 2020; the Court does not interpret the Complaint to suggest that Verrelli's removal violated a requisite agreement.   The Court does not find that any causes of action raised in the Complaint are dependent upon the terms of a labor contract and, as a result, concludes that Plaintiffs' claims are not preempted by the LMRA.

In sum, there is no federal question raised in Plaintiffs' Complaint and, as a result, this Court lacks subject-matter jurisdiction over this matter.  Plaintiffs' motion to remand is granted.

### IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' motion to remand is **GRANTED**.  An appropriate Order accompanies this Opinion.


Dated: August 17, 2021

                                                                                                      _____
                                                                                                      John Michael Vazquez, U.S.D.J.